UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FREDERICK ALAN SIMMONS Estate Of, deceased, _____ | ) ) ) ) |
| In Re: FREDERICK ALAN SIMMONS Estate Of, deceased, | ) ) ) ) ) |
| JACQUELYN S. GRAMMAN Clerk's Entry of Default, 10/14/2016, _____ | ) ) ) ) ) ) |
| UNITED STATES OF AMERICA IRS, DEBORAH SCOTT, RICHARD A. GREEN, JOHN PORTER, | ) ) ) ) ) |
| Receivers. | ) ) |

No. 1:15-cv-01097-TWP-MPB

## REPORT AND RECOMMENDATION

Four motions pend in this case related to the parties' claim priorities dispute.

### I.  Overview

The Boone County Superior Court probated the Estate of Frederick Alan Simmons, of which its principal asset was the decedent's residence that is encumbered by a federal tax lien. On July 10, 2015, absent any agreement with the United States, the state court entered an order closing the Estate as insolvent. The order provided for distribution of the proceeds from a sale of the decedent's residence. The distribution listed the federal tax lien as seventh in priority among creditors and not ordered to be paid in full.

On July 14, 2015, the United States removed the State Court Action to this Court. On July 21, 2015, the United States filed a complaint in this Court, in Case No. 1:15-cv-01146 (the "Original Action"), seeking to reduce Simmons's unpaid federal tax liabilities to judgment, to enforce federal tax liens against the Property, and to determine the priority of lines encumbering the Estate's property, both real and personal. The Original Action and the instant action were consolidated on September 30, 2015.

On May 27, 2016, the Court issued an Order authorizing the sale of the Property for $275,000.00. (Docket No. 61). The Court acknowledged receipt of $245,766.41, representing the net proceeds of the sale of the Property after payment of the Receiver's commission and the costs of the sale. (Docket No. 63). On September 1, 2016, Simmons & Associates, Inc.'s mortgage against the property was released.

On September 8, 2016, Clark, Quinn, Moses, Scott & Gran, LLP and Raelinn M. Spiekhout, Personal Representative of Simmons's Estate, filed a motion for hearing to determine claims priorities. (Docket No. 64). This Court ordered parties to submit briefs in support of their positions regarding claims priorities and set the matter for oral argument. (Docket No. 80). Spiekhout, Deborah Scott, a former spouse of decedent, and Richard Allen Green, a former employee of decedent, each filed briefs. (Docket No. 84, Docket No. 87, Docket No. 89). In lieu of filing a brief, the Government filed a Motion for Partial Summary Judgment. (Docket No. 85). Spiekhout also filed a Motion for Partial Summary Judgment. (Docket No. 90). In light of these motions, the Court vacated its oral argument and ordered all parties to file motions for summary judgment on or before January 27, 2017. Scott filed her Motion for Partial Summary Judgment on January 13, 2017. (Docket No. 104). No other summary judgment motions were filed.

## II. Standard of Review

The Court will first turn its attention to the summary judgment motions. The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, a party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

**III.     Facts**

The facts are taken from the complaint and evidentiary materials submitted in support of and opposition to summary judgment.

Frederick Alan Simmons died June 5, 2014, a resident of Zionsville, Boone County, Indiana. Raelinn Spiekhout, surviving spouse and Personal Representative of Simmons's Estate, opened a probate action for Simmons's Estate in the Boone County Superior Court on June 11, 2014. Spiekhout engaged Charles R. Grahn of Clark Quinn Moses Scott & Grahn, LLP, to represent her in her Personal Representative duties. The principal asset of the Estate was the decedent's residence at 920 Tillson Drive, Zionsville, Indiana ("Property").

During Simmons's life he was married to Deborah Scott and they had one child, Erik Simmons, born in 1991. Scott and the decedent's May 22, 1998 divorce decree provided, in relevant part, that the decedent would pay $1,274.00 per month in child support, $1,000.00 per month in maintenance, Erik's health insurance benefits, and any of Erik's uninsured health care costs. They also agreed Simmons would pay and hold Scott harmless from any and all encumbrances on the Property. Scott quitclaimed her interest in the Property to Scott.

Once the Estate was opened in state court, a number of claims were filed, including:

   a. Scott, for allegedly past due child support, alimony, medical expenses, and insurance expenses, totaling $49,041.71.

   b. Richard Alan Green, former employee of Simmons, for a claim stemming from unpaid wages and benefits, totaling $364,800.00.

   c. Firehouse Properties LLC, for an alleged breach of lease, totaling $113,170.61.

   d. Carol Ann Smedley, for a default of a promissory note, totaling $124,275.82.[1]

---

[1] Court granted Smedley's motion to remove her claim on March 8, 2016. (Docket No. 56).

4

  e. James M. Simmons, for a default of a promissory note, totaling $124,275.82.[2]

  f. Jacquelyn S. Gramman, for allegedly unpaid wages, totaling $440,221.08.

  g. State of Indiana, for two tax warrants.[3]

  h. The Internal Revenue Service ("IRS"), for unpaid federal income taxes and Trust Fund Recovery Penalties, totaling $591,406.05.[4]

  i. Capital One, for purchase of goods and/or services, totaling $3,073.14.

On March 16, 2015, the Personal Representative filed a petition to approve the sale of the Property to Indy Houses LLC for $282,000.00, but did not serve on United States in accordance with 28 U.S.C. § 2410(b) to trigger the 30-day removal period.[5] The State Court approved the sale on April 16, 2015. On May 11, 2015, the Personal Representative filed a petition to close the Estate as insolvent, showing that the Estate anticipated having total distributable assets of $266,872.70, upon closing of the sale approved by the court and also including the cash in the Estate's possession contrasted against the $1,812,621.69 in claims made against the Estate. This petition was also not served on the United States so as to trigger the 30-day removal time.

 On July 10, 2015, the State Court issued an Order closing the Estate as insolvent and ordered disbursements such that the IRS sat seventh in line. (Docket No. 6-5). On July 14, 2015, the United States removed the State Court Action to this Court, as detailed above. On May 27, 2016, the Court issued an Order authorizing the sale of the Property to Indy Houses LLC for

---

[2] Court granted Simmons's motion to remove her claim on March 8, 2016. (Docket No. 56).
[3] State of Indiana released the warrants on August 1, 2016.
[4] Specifically, the IRS seeks payment for unpaid federal income tax years 2001, 2003, 2004, 2007 and 2012, and Trust Fund recovery Penalties for the quarterly tax periods ending March 31, 2009, June 30, 2009, September 30, 2009, December 31, 2009, March 31, 2010, June 30, 2010, September 30, 2010, September 30, 2011, December 31, 2011, March 31, 2012, June 30, 2012, September 30, 2012, December 31, 2012, March 31, 2013, and June 30, 2012. The United States filed Notices of Federal Tax Lien for these liabilities during the decedent's lifetime, and has timely refiled such notices as necessary. (Docket No. 9-1; Docket No. 43-1). The Notice for 2003 and 2004 was recorded in March 2006 and the Notice for 2001 was recorded in April 2006; those three years' liabilities exceed the proceeds of the Property, thus the Court will not outline the remainder of the notices in this entry.
[5] This Court has previously determined that the service given to the IRS was improper in accordance with 28 U.S.C.A § 2410(b) because it was not served to "the United States attorney for the district in which the action is brought." (Docket No. 56).

$275,000.00. Net proceeds of $245,766.41 were received by the Court after payment of receiver's commission and the costs of sale. (Docket No. 63). On September 1, 2016, the Personal Representative recorded a release dated April 27, 2015 of a mortgage granted by Simmons and Deborah Simmons to Simmons & Associates, Inc., against the property.

### IV. Government's Motion for Partial Summary Judgment (Docket No. 85)

The Government seeks a determination that the federal tax liens arising from Simmons's unpaid federal income taxes and Trust Fund Recovery Penalties, have priority over any claims of other parties with regards to the proceeds of the Property's sale. (Docket No. 86).

The Government moves for partial summary judgment on the theory that the federal tax liens have priority over the other claims pursuant to 26 U.S.C. § 6321.

State law governs most conflicts between lienholders competing for the same property, but when one of those competitors is the United States Government holding a lien for unpaid taxes[6]—then federal law governs. *Sgro v. United States*, 609 F.2d 1259, 1260 (7th Cir. 1979) (citations omitted). When a tax liability is assessed, and notice of such liability and a demand for payment is made, a federal tax lien arises on all property or rights to property belonging to that taxpayer. 26 U.S.C. § 6321. The assessment lien has priority over any unperfected liens. *See Mervis Industries v. Sams*, 866 F. Supp. 1143, 1146 (S.D. Ind. 1994). If the United States subsequently files notice of the federal tax liens, it enjoys priority over all other interests, except for purchasers, holders of security interests, mechanics lienors, and judgment lien creditors

---

[6] Section 6321 of the Internal Revenue Code, 26 U.S.C. § 6321 (1976), provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

6

whose interests are choate at the time that the notice of federal tax lien is filed. *Sgro*, 609 F.2d at 1261.

In this case, the United States filed notice of its lien with the Boone County Recorder in March 2006 for unpaid taxes from 2003 and 2004 and in April 2006 for unpaid taxes from 2001.[7] This notice is effective under Ind. Code § 36-2-11-25 ("In order for a [federal lien on real property or any federal tax lien on personal property] to be perfected, notice of the lien must be filed in the office of the recorder of the county in which the real or personal property subject to the lien is located."). Therefore, the Court finds that the Government properly filed notice of the federal tax liens for these years, as required by 26 U.S.C. § 6323(f)(1).

The Government asserts that the federal tax liens have priority over the claims of the Personal Representative and her counsel. Personal Representative, Spiekhout, is also the surviving spouse of Simmons and seeks a judgment finding that her surviving spouse statutory allowance under Ind. Code § 29-1-4-1 and the expenses of the administration of Simmons's estate should have priority for payment ahead of other claims, including those of the IRS. (Docket No. 90 at ECF p. 90). The Court agrees with the Government that the federal tax liens have priority over the claims of Spiekhout and her counsel. Under 26 U.S.C. § 6323, if an interest is not accorded superpriority under § 6323(b), then priority is determined by the first in time rule. *Western Nat. Bank v. United States*, 8 F.3d 253, 256 (5th Cir. 1993). "[T]here is no indication that Congress intended to subordinate a federal tax lien to the type of claim asserted by the Estate. If Congress had wanted funeral and administrative expenses to prime an antecedent recorded federal tax lien, it could have done so." *Estate of Friedman v. Cadle Co.*,

---

[7] The Government does not detail the lien amount for each of these three years. According to the September 8, 2014 Proof of Claim for Internal Revenue Taxes, 2001 totaled $40,146.44; 2003 totaled $216,497.78; and 2004 totaled $56,873.40, for an overall total of $313,517.62 exceeding the Estate's current worth. (Docket No. 85-7 at ECF p. 1).

7

2009 WL 7271206 (C.D. Conn. 2009). Given the statutory exceptions to the first in time rule do not include Spiekhout nor the Estate's claim, the IRS's tax lien should have priority over the Estate's expenses and Spiekhout's statutory surviving spouse allowance.

The Court recognizes that pursuant to the Internal Revenue Manual ("IRM"), the IRS "***may in its* discretion** not assert priority over reasonable administrative expenses of the estate." IRM 5.5.2.4(3) (emphasis in original). This is "limited to expenses for preserving and marshalling estate assets . . . Consideration should be given to how does allowance of this expense benefit the Government giving up its lien position." IRM 5.5.2.6.1(2). This subordination is in the discretion of the United States and is not subject to judicial review. *See Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997) ("Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers."). The Government has indicated it will allow $6,514.76 to be paid to Defendant Clark Quinn Moses Scott & Grahn LLP and it would pay then Personal Representative for unreimbursed expenses of personal funds to maintain the Estate, provided she can provide documentation, before any distribution of proceeds is made to the United States. The Court should have no judicial authority to review these payments and thus finds Spiekhout's and her counsels' arguments related to legal fees incurred irrelevant to the issues before this Court.

The Government also asserts that its tax liens have priority over Scott's claims for unpaid child support, alimony, and medical expenses. (Docket No. 86 at ECF p. 11). Pursuant to Ind. Code § 31-16-16-2, Scott's claim for unpaid child support does appear to be a lien as it is a delinquent payment require under a support order. However, the lienholder of such a lien "has the priority of an unperfected secured creditor in any enforcement proceeding instituted against the property [and] may perfect the lien in the same manner as liens arising from other civil

judgments are perfected." Ind. Code § 31-16-16-3(b). A judgement lien creditor, for purposes of § 6323 is "a person who has perfected a lien under the judgment upon the property involved [. . .] If recording or docketing is necessary under local law before a judgment becomes effective against third parties acquiring liens on real property, a judgment lien under local law is not perfected with respect to real property until the time of such recordation or docketing." 26 C.F.R. § 301.6323(h)-1(g).

Indiana law provides that final judgments constitute a lien upon real estate "in the county where the judgment has been duly entered and indexed in the judgment docket as provided by law after the time the judgment was entered and indexed." Ind. Code § 34-55-9-2. There is no evidence and Scott does not otherwise argue that she filed a copy of her judgment in Boone County and, thus, this is not a judgment lien creditor for purposes of § 6323. The Government's federal tax liens for 2001, 2003, and 2004 should take priority over Scott's claims.

The Government asserts that its liens are prior to Richard Alan Green's claim for allegedly unpaid wages. Green did not respond to the Government's summary judgment motion nor has he otherwise submitted evidence or claimed that he was the holder of a security interest against the property nor that he reduced his claim for unpaid wages to a subsequently recorded judgment. Thus, the Government's federal tax liens should take priority over Green's claims.

The Government asserts that its liens have priority over any claim the Indiana Department of Revenue may have for unpaid taxes. The Indiana DOR has not filed a claim with the Estate, has not appeared in the case despite being served with copies of the summons and amended complaint, and has released its previously filed tax warrants with the Clerk of Boone County. Thus, the Government's federal tax liens should take priority over any claim by the Indiana Department of Revenue.

9

Finally, the Government's tax liens should have priority over any remaining parties. Boone County, Indiana, was named a party but the outstanding real estate taxes were paid at closing. (Docket No. 61). Simmons & Associates, Inc., was named as a party because it held a mortgage dated June 1, 1998, and recorded with the Recorder of Boone County, Indiana, on June 4, 1998. However, on September 1, 2016, a release of the mortgage was recorded with the Recorder of Boone County, Indiana, indicating the release had been executed on April 27, 2015. Smedley and Simmons claims were both released on March 8, 2016, by Court order. Firehouse Properties LLC, Jacquelyn S. Gramman, and Capital One were all named defendants because they were claimants in the state probate case, but since had Clerk's Entry of Default entered against them as they did not answer or otherwise defend in this case.

For all these reasons, the Government's partial motion for summary judgment (Docket No. 85) should be granted.

### V.   Spiekhout's Motion for Summary Judgment (Docket No. 90)

Given the Government's partial motion for summary judgment should be granted, the remaining parties' motions should be denied. The Court will briefly address those parties' arguments and evidence.

Spiekhout seeks a determination that the statutory allowance under Ind. Code § 29-1-4-1 for a surviving spouse and the expenses of the administration, including fees and expenses incurred by Spiekhout and her counsel and legal fees Spiekhout incurred to administer the estate should have priority over other claims. In support, Spiekhout argues that the Federal Priority Statute, 31 U.S.C. § 3713, provides that when the estate of a deceased debtor is insufficient to pay all of the decedent's debts, as is the case here, claims of the United States Government are entitled to priority over claims of other creditors of the *decedent*. (Docket No. 91 at ECF p. 4).

However, the claims for which Spiekhout seeks payment for are debts of the Estate, not of Simmons personally. See *In re Estate of Funk*, 849 N.E.2d 366, 373 (Ill. 2006) ("The priority of the federal government is limited to the net proceeds from the property of the deceased after the debts of the estate are paid.").

Spiekhout relies on the wrong statute. This case is governed by the Federal Tax Lien Act, 26 U.S.C. § 6323, not 31 U.S.C. § 3713, and as discussed above, funeral and administrative expenses do not have priority over a federal tax lien as "there is no indication that Congress intended to subordinate a federal tax lien" to these types of claims. *Estate of Friedman*, 2009 WL 7271206, at *1 n.8. Spiekhout's policy arguments are similarly unpersuasive largely because they rely on state law, case law and IRM sections analyzing § 6323 and not § 3713.

Spiekhout's partial motion for summary judgment should be denied. (Docket No. 90).

VI. **Scott's Motion for Partial Summary Judgment (Docket No. 90)**

Scott, former spouse, filed motion for partial summary judgment incorporating her evidence and arguments she submitted in accordance with the Court's briefing schedule on the Motion for Claims Priority Hearing. (Docket No. 90).

Scott seeks a determination that her claims for unpaid child support, unpaid alimony, and unpaid health insurance payments and medical bills for her and Simmons's child, Erik, are entitled to a priority claim over the United States. (Docket No. 87). Scott asserts that while federal law determines the consequences of a federal tax lien that attaches to a property interest, the state law determines the extent of property interests of the parties to an action. *Scottsdale Ins. Co. v. English Furniture Industries, Inc.*, 1999 WL 250898 at *10 (S.D. Ind. March 19, 1999). Scott argues that Indiana law provides that the child support arrearages are held by Erik, not the Estate, and other jurisdictions have held under 31 U.S.C. § 3713 can supersede a minor child's

11

allowance to a parent's estate under a state probate code. She argues that her claims for maintenance should take priority because to supplant Scott's claim based on unpaid maintenance would be inconsistent with Indiana policy favoring dissolution agreements. Finally, Scott argues that Simmons agreed to hold Scott harmless from any lien placed on the Property, which she argues includes these liens. In making these arguments, Scott relies on a variety of Indiana code provisions as well as the Bankruptcy Code.

Scott's arguments are without merit. Like Spiekhout, Scott wrongly applies 31 U.S.C. § 3713 to this case. Also, *In re Hambright*, 762 N.E.2d 98, 101 (Ind. 2002), which Scott relies on to argue the arreages are held by Erik addressed whether the bankruptcy estate of a custodial parent included as part of the estate her right to collect support for the benefit of her child. It does not stand for the proposition that a non-custodial parent's unpaid child support or other unreimbursed, child-related expenses strips him of his real property ownership interest unless and until those expenses are paid. As discussed above, Indiana law provided Scott with an automatic judgment against Simmons for unpaid child support claims ordered by the Divorce Decree, yet it was an unperfected lien as it was not perfected in the same manner as liens arising from other civil judgments. Ind. Code § 31-16-16-3(b). Like Simmons, and for the same reasons, Scott's policy reasons are unpersuasive. See *State of Michigan v. United States*, 317 U.S. 338, 340 (1943) ("[I]t is not debatable that a tax lien imposed by a law of Congress . . . cannot, without the consent of Congress, be displaced by later liens imposed by authority of any state law or judicial decision."). Finally, the hold harmless clause in the divorce decree promised to make Scott whole if she were to be held personally liable or if her own property were seized to pay any debts. This is not the case here.

12

Scott submits a supplemental brief arguing that under the *Rooker-Feldman* doctrine, lower federal courts do not have subject matter jurisdiction over claims seeking review of state court judgments. (Docket No. 108). *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). With respect to the state court action the Government removed to this court, the *Rooker-Feldman* doctrine provides "lower federal courts lack jurisdiction to engage in appellate review of state court determinations." *Garry v. Geils*, 82 F.3d 1362, 1365-66 (7th Cir. 1996) (quoting *Ritter v. Ross*, 992 F.2d 750, 753 (7th Cir. 1993)). However, this Court previously ruled that the Government timely removed the state court case, which was still pending at the time of removal. (Docket No. 49; Docket No. 56). When a case is removed, the federal court sits in the shoes of the state court from which the case was removed. *Kent v. Harris*, No. 08-cv-141-BBC, 2008 WL 2434122, at *1 (W.D. Wis. June 13, 2008).

With regards to the Government's original action that was consolidated into this case, the *Rooker-Feldman* doctrine does not preclude a federal plaintiff from presenting an independent claim alleging a prior injury that a state court failed to remedy, so long as it is not alleging an injury caused by the state court judgment. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). This Court previously found that the state court failed to resolve the federal tax liens. (Docket No. 49; Docket No. 56). These liens preexisted the state court action and were, by definition, prior injuries the state court failed to address.

Scott's partial motion for summary judgment should be denied.

**VII.    Green's Brief on Priority of Liens (Docket No. 89)**

While Green did not submit a summary judgment motion, he did submit a brief on priority of liens in accordance with the Court order. There, he asserts that his claims should have priority over the IRS claim to assets of the estate, either by statute or in equity. In support of his

claims, he contends that filed a federal crossclaim that has not been answered, thus the pleading's factual and legal allegations have been admitted. He further contends that the bankruptcy priority statute should apply since this is an insolvent estate and "but for" it being an estate, Green or another party would be entitled to place the matter into bankruptcy and obtain the benefit of the bankruptcy priority statute. He argues that § 6323 does not apply where another person has obtained an interest in property that would prevail over the tax lien before the insolvency proceedings begin. *See U.S. v. Estate of Romani*, 523 U.S. 517, 530-33 (1998). Finally, he argues under equity his claims should have priority over the Government's claims.

First, Green's crossclaim was against Spiekhout, individually and as a personal representative of the Estate, not the Government and Green has not moved for an entry of default against Spiekhout for her alleged failure to answer. Even if default had been properly entered, a court need not accept a complaint's legal conclusions. *Larance v. Bayh*, No. 3:94-cv-182RM, 1995 WL 46718, at *2 (N.D. Ind. Jan. 18, 1995), *aff'd sub nom. Abdul-Wadood v. Bayh*, 85 F.3d 631 (7th Cir. 1996). Like the other defendants, there is no precedent for Green's argument that the bankruptcy proceedings apply. *Estate of Romani* is inapplicable to this matter because in that case the judgment lien creditor was entitled to priority under § 6323 because its lien had been perfected prior to the United States filing its notices of federal tax lien. 523 U.S. at 519-20. Green has not even secured a lien, nevertheless perfected the lien. Finally, the case Green relies on for his equity argument recognizes that "equitable principles do not generally preclude IRS from collecting taxes that are legally owed." *Freck v. I.R.S.*, 37 F.3d 986 (3d Cir. 1994) (stating that because the IRS itself relied on equitable principles in its case, *Freck* was distinguishable from this general maxim).

Green's claims should not take priority over the Government's claims.

**VIII. Conclusion**

For all these reasons, the Magistrate Judge recommends that the Government's motion for partial summary judgment (Docket No. 85) be granted, Spiekhout's motion for partial summary judgment (Docket No. 90) be denied, Scott's motion for partial summary judgment (Docket No. 104) and Clark Quinn Moses Scott & Grahn LLP and Spiekhout's motion for hearing to determine claims priorities (Docket No. 64) be denied as moot as the disposition of the summary judgment motions resolves the claims priority dispute to the extent necessary to exhaust the Estate's total proceeds. The Magistrate Judge recommends the following priority for the distribution of the Estate's proceeds:

1. Judgment entered in favor of Plaintiff United States of America, determining that the federal tax liens are first priority claim with regard to the distribution of the proceeds of sale of the parcel property located in Zionsville, Indiana, which are in the Court Registry.

2. The proceeds of the net sale proceeds shall be distributed as follows:

   a. By consent of the United States, to Clark Quinn Moses Scott and Grahn LLP, $6,514.76;

   b. By consent of the United States, to Raelinn M. Spiekhout, in an amount to be specified by counsel for the United States, provided that such amount shall be zero if Raelinn M. Spiekhout does not, within 14 days of an Order, provide adequate documentation to counsel for the United States of the expenses of administration that she claims were paid using her own funds and not those of the Estate and demonstrating that all Estate funds were used for other expenses; and

      c.    The remainder to the United States, in partial satisfaction of Frederick Alan Simmons's unpaid federal income tax liabilities for the tax years 2001, 2003, 2004, 2007, and 2012, and Frederick Alan Simmons's Trust Fund Recovery Penalty liabilities for the quarterly tax periods ending March 31, 2009, June 30, 2009, September 30, 2009, December 31, 2009, March 31, 2010, June 30, 2010, September 30, 2010, September 30, 2011, December 31, 2011, March 31, 2012, June 30, 2012, September 30, 2012, December 31, 2012, March 31, 2013, and June 30, 2013, to be allocated among such liabilities in the discretion of the United States.

Any objections to the Magistrate Judge's Report and Recommendation must be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 22nd day of May, 2017.

Served electronically on all ECF-registered counsel of record.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana